All right, when you're ready, counsel, good morning. Thank you, Your Honor. May it please the Court, Brian Boyle for the defendant's appellants. And with the Court's indulgence, I'll try to reserve a couple of minutes for rebuttal. The Supreme Court's decision in Pegram teaches that in fiduciary breach litigation, the threshold question is whether the defendants were acting as fiduciaries when taking the action subject to complaint. Now, the core complaint here is that Transamerica Life acted as a fiduciary when it collected fees, so-called IM and admin fees, from pooled investments on its investment platform. It is undisputed, however, that Transamerica's planned clients, independent fiduciaries for those clients, selected the investments from Transamerica's large menu of investments, including investments that were managed by Transamerica's affiliates, Transamerica Investment Management, Transamerica Asset Management. It's also undisputed that the client signed a contract specifying the precise fees that Transamerica was to withdraw, along with specifying the precise manner in which the fees were supposed to be withdrawn on a daily paraded basis for these investments. May I ask you a question about that? There's no allegation in this complaint, as I understand it, that Transamerica didn't collect out of the accounts precisely the amounts that it had contracted for. No allegation whatsoever. If there had been such an allegation, would that implicate a breach of fiduciary duty? You know, it's an excellent question. Thank you. And I think there'd be a breach of contract. Well, why wouldn't there be a breach? The way I look at this is that your client does have a fiduciary duty in its management of these accounts, does it not? You can't steal from them. That's correct. It has underlying fiduciary duties with respect to these accounts. I think the answer, Your Honor, is it would be both a breach of contract and a fiduciary breach because in taking the additional fees not authorized by contract, Transamerica would be acting with discretion saying, I mean, of taking fees that it wasn't entitled to. Well, see, the reason I ask is that I'm not I don't know that it matters to the outcome of this case, at least under this scenario, but one might posit that your client does have a fiduciary duty with respect to management and taking fees out of the account, but it couldn't have breached that duty if it only took the amount that was agreed upon. That is one of the arguments. In other words, not that you didn't have a duty, but rather there's no allegation of breach with respect to collection. The nature of this complaint, though, is that Transamerica wore a fiduciary hat when enforcing a contractual term for fees. Well, and I'm saying maybe it did. Let's assume for purposes of my question that it did. My question then is, is there any allegation, how did it what's the allegation in the complaint of how it breached that duty when it collected? Put aside when it negotiated the fees. What's the allegation in the complaint about how a breach of that duty occurred? Well, the plaintiffs have a number of theories that they pressed below. I'm not talking about theories. I'm talking about facts. Really, it's a favorable question to you. I'm not trying to trap you. I don't see any allegation in the complaint that Transamerica collected from the accounts any more than what it contracted for with the employer. That's correct. If it had collected more, that, in my view, might be a breach of You may well have a fiduciary duty with respect to those accounts, but I'm struggling, and I want to ask the question of the other side too, to see where there's any allegation of breach of that duty in the taking out of fees. Right. This complaint is about a challenge to the reasonableness of fees that were agreed to by these clients when they engaged at Transamerica. So let me get to the question that the district court sort of posed. What if your client and the employer in a perfectly arm's length negotiation agreed to a fee that was outrageous? That was Judge Pregerson's concern. I'm mirroring Judge Pregerson, so I'm asking the question that he asked. Plainly, the employer would be engaged in a breach of fiduciary duty at that point. And that was the answer that the Third Circuit gave in the eponymous Santimento case. At what point does your client or somebody in your client's position breach its fiduciary duty, breach a duty to the beneficiaries of the trust by agreeing to an outrageous deal? Well, there are co-fiduciary provisions in ERISA, Section 405. But as the Third Circuit said in the eponymous Santimento case, it is not true that ERISA doesn't provide a remedy to the hapless participants who have to pay these extraordinary fees. They can sue their employer. Would it be a breach of fiduciary duty if you conspired with the employer to come up with outrageous fees? I don't know how to analyze that because, of course, there was an agreement here between Transamerica and the plain fiduciaries, and that's sort of some level a classic. Let me give you a hypothetical. Transamerica goes to the employer and says, here are our fees. The employer says, they seem a little bit too high, but if you kick back some of them to me, I'll agree to them. Clearly, the employer has breached its fiduciary duty, no doubt. Has Transamerica? There is a species of liability under ERISA for non-fiduciaries where they participate knowingly in a breach of fiduciary duty by another. The remedy that ERISA provides is limited to equitable remedies, but yes, there would be some potential cause of action in that instance. Here, though, this complaint about the excessiveness of fees is how can I put it? It is a little bit audacious because Transamerica gets clients by winning competitions, typically, where it's competing with other providers and it typically wins when it provides the lowest price. We're at a 12 v. 6 stage. I understand. We have to assume, at least for purposes of our discussion, that perhaps the fees were too high. There's certainly no allegation in the complaint that the market is not competitive, that there weren't price competitions. There's no foundational information in the complaint to believe that Transamerica should have known. Do you think there's no plausibility to their it doesn't meet Iqbal and Twombly standards, their allegation that the fees are too high? Well, that's not the basis for the arguments we've brought here, Your Honor. To be fair to you, you haven't argued this, so I'm wondering why you're going down this rabbit hole. I was simply trying to respond to Your Honor's questions. The concern we have raised for the Court is whether it's proper to treat Transamerica life as a fiduciary with respect to the fees. Now, Judge Pregerson's rationale, I think, was adequately answered by the Third Circuit in its Santimento case. I know the basic argument is that upon the negotiation to enter into this arrangement, you're not a fiduciary, and I understand that. But another aspect of your argument, if I'm reading it correctly, is that you're saying, and practically, it wouldn't work or it would be too cumbersome to have a mechanism whereby some other third party, perhaps, would facilitate the negotiation over fees and thereby insulate the fiduciary from involvement in the actual negotiation process, if I understood your argument. Why is that? Why would putting aside, assuming for a moment, that the determination is that you have a fiduciary relationship at the point of negotiating the fees, why would it be cumbersome or impossible to have some mechanism whereby fee negotiation took place where you're somewhat removed from that? Well, ERISA supplies that structure. ERISA declares that each plan shall be represented by a named fiduciary that has plenary responsibility for making service arrangements with Blink, for engaging with parties like Transamerica. And as the cases have recognized, and there are many we cite, F.H. Crear in the Second Circuit, Santimento in the Third that I mentioned, a host of others, those courts have made clear that because of that enforcement structure in ERISA that plans must be represented by named fiduciaries with plenary authority, a service provider is free to take off, even if it's being engaged in a fiduciary capacity, it's free to take off that hat and represent its own interest in the negotiation. I understand that. I think my question was a little different. Let's assume that we don't, I don't agree with you on that basic argument. I thought you made a further argument that, a practical argument, that at the fee negotiation point of the relationship, it simply would be impossible or not workable for some alternative mechanism to be in place to do that negotiation. That almost by definition, your client has to be the negotiating party for your client's fees. Did I misunderstand your argument? That the client is free to represent its own interest. I understand that. That's your position. And they are free. I understand you're saying we're free to do that. And the other side was responding in some way saying well it wouldn't be practically difficult for us to bring in someone else to do the fee negotiation. And I just wanted your reaction to that as to whether or not assuming that you were not to prevail on your basic argument, couldn't we put up, create a mechanism to do the fee negotiation? A referee requirement. Yeah, yeah. There has to be an independent referee to come in. Well, it's simply unprecedented. It's inconsistent with the RISA's enforcement structure which contemplates that plans will have their interests vied for by named fiduciaries with plenary responsibility. I think your honor may be referring to the priveted transaction theory that plaintiffs offer, that even if we weren't a fiduciary as to the if these were agreed upon fees taken in the agreed upon manner, we nevertheless engaged in self-dealing priveted transactions by taking them out of plan assets. And plaintiffs proposed there that there needs to be a separate confirmatory instruction from plan clients before those fees are taken. And that might make some sense in my mind if the fees were variable. In other words, if you were saying for services rendered last month we're billing you this. We'll bill you what we bill you and then if you take those fees, and I think that's what's behind Barboza, there was something that bothered the court in Barboza about the details of the agreement with the administrator. Something wasn't fully specified, either the amount of the fees or the manner of their withdrawal, whether they should be taken in advance or in arrears. And so the court in Barboza said, just applying the Patelco Credit Union, that if you both determine your own fees and collect them from plan assets, that's a self-dealing priveted transaction. But the determination here was made by the previous negotiation. Here, the fees were, every penny was specified in a contract that the independent plan name fiduciaries agreed to in advance. I want to ask you two questions. I'm sorry, I didn't mean to cut you off. Crucially, the contract specified exactly when fees were to be taken on a contract from plan assets. It didn't leave any room for discretion on how those fees were going to be taken. Let me ask you two questions. One is not brief, but I can't help but notice the name of the Third Circuit case. Is it the same plaintiff? It includes some of the same plaintiffs. The Santameno that brought the case is, I believe, the sister of the... Was the class certified in the Third Circuit? It's a different service provider as well. John Hancock. If the same class litigated the same issues, we might have a different issue. Maybe I could make a loose argument that we don't want two Santamenos on the books with different principles. No one will know. My next question is about the class certification. Let me ask you a question. Let's assume we agree with you that the judge erred in not dismissing the complaint. That we find that we reversed the 12B6 ruling. What do we do with the class certification ruling under those circumstances? I think that becomes mooted. The dismissal would be operative only with respect to the name plaintiffs. So we ought to vacate the class certification ruling? Or provide instructions for vacature of the order. Let's assume that we uphold the judge's 12B6 ruling. What should we do with the class certification? The class certification issue we have presented to your honor is an excessive fee class certification order. It's a claim that Transamerica Life, with respect to some of the separate accounts, charged excessive fees. And the particular separate accounts they're focused on are those that are managed by the affiliated entities, Transamerica Asset Management, Transamerica Investment Management. The court, with respect to the broader excessive fee class, the district court said this class is unsustainable because Transamerica has a due process right to present what we would call a total fee defense. That the total fees collected... But with respect to the class they're not appealing in saying the class should have been broader. Our point is that the excessive fee class that the court range of separate accounts, the ones managed by affiliated entities, is subject to the same defect. But isn't your defense to that claim... Remember, we're only at the 12B6 stage here. But isn't your defense to that claim applicable to all class members, which is to say, no, A, we didn't have a fiduciary duty in negotiation, and B, we didn't breach it even if we had one. So I'm having some difficulty understanding why, at least at this class. The broader fiduciary status question, some of those questions are common, like the question we were debating earlier, does a service provider have an inherent fiduciary duty when negotiating its fees? Given that, and given the fact that we're at an early stage of this litigation, why would we want to vacate the narrower class certification order? Well, there's a full class certification record before the court, and it established that the way Transamerica would defend itself against claims of excessive fees, whether in the broader class of all separate accounts or in the narrower class of just the Transamerica managed separate accounts, is by saying our total fees are reasonable by reference to the services we provide. Let me assume something. Let's assume you're successful. Let's assume you go to trial and you prove that you didn't breach any fiduciary duties. Wouldn't you want that to apply to the whole class? Well, the problem with that, I've heard this before, that if defendants feel good about their position, they should want the broadest possible class and broadest possible conclusion. But we're playing with our money, making that bet. Couldn't a judge manage this? Couldn't a judge say, first, let's figure out whether you've got a fiduciary duty. And then we'll have a separate proceeding on damages, and as to that, I'm not going to have a class certified. But 90% of the proceeding is going to be about whether the fees were reasonable or not. And that's, as the judge found with respect to the broader fee class, is a function of individualized findings about the particular services we provided to a particular plan relative to the total fees we collected. And the fees are quite variable, as the record establishes. I think I'm going to stop here, Your Honor. Well, let me ask you a question before you sit down about the class that pertains to the transactions with your affiliates, the TIM and TAM. Just to try to make sure I understand those claims, those are not premised on whether or not you're, at that stage, have a fiduciary obligation to the plan participants. You do at that stage, don't you? We do have acknowledged a fiduciary responsibility with respect to the underlying investments in the separate accounts. And if I understand your argument, your argument is that the employer, who also has fiduciary obligations to the plan participants, has made the selection, and there's no allegation that there's anything that's been hidden from them or what have you. And so when they've selected your affiliates with a full understanding of what the arrangements are, then the fact that you are conducting your business vis-a-vis those affiliates with respect to the plan, that doesn't breach any fiduciary obligations. Is that fair? Two points. There are two separate claims that planists make with respect to those separate accounts, the TIM and TAM separate accounts. The first is privative transactions that we self-dealt when we appointed trans-American entities to run the account. That is precluded by the employer's decision to opt for that particular investment when engaging trans-America. There was no other transaction since there. Notably, the complaint does not say that after clients selected these accounts that we changed the character of an account. That's not in the complaint. The separate claim is that trans-America Life paid the trans-America entities too much money. That is the theoretically as to the investment management and administrative fees, that shouldn't matter because those fees were agreed to in advance by the employers, by the named fiduciaries. As to the underlying account fees, like the underlying mutual fund fee, we've never understood plaintiffs to be complaining about that here. Their fiduciary status theories are oriented toward the top-line investment management and administrative fees that were in the schedule. But to the extent they are complaining about those underlying fees, the underlying mutual fund fees, our class certification arguments would preclude a presentation of that claim on a class basis because we're entitled to bring a plan-specific defense to the overall reasonableness of the fees. Put the class issue aside. Isn't your defense against that the same as your overall defense, which is they were all disclosed? We'd have that additional... All the fees down the line were disclosed in advance and the employer signed up for the deal. That's correct. There are some wrinkles to it, but the core of that is absolutely right, Your Honor. All right. Thank you, Counselor. Thank you. Good morning, Your Honor. Good morning. Arnold Lakin of the law firm of Schaeferman-Lakin for Plaintiff's Respondents. May it please the Court. The upshot of defendants' argument is, first, they did nothing wrong. We think they did. Secondly, if they did something wrong, they negotiated the right to do so with a planned fiduciary who they say in their brief is not sufficiently sophisticated to understand how to... Let me ask you this, Counsel. With regard to the IM and administrative fees, we have some pretty compelling guidance from the Third Circuit in the Santo Meno case. Is there a rationale that we can adopt in ruling in your favor without creating a circuit split? To ask it a different way, are there factual allegations in this particular case that would take this outside of the realm of the Santo Meno case? Yes, there are. And what are those factual allegations? There are, first, legal and factual differences. First, in Santo Meno, in the Hancock Santo Meno, the motion was made only under subsection 1 of... We only asserted fiduciary status under subsection 1 of the definition of fiduciary. We did not discuss subsection 3 or any other basis, which is at issue here. That's number 1. Well, and what's the... Okay. Why is that a distinction with a difference? In subsection 1, the issue is has the fiduciary exercised discretion with regard to the management of the fund? There is a second prong of subsection 1, which says, did the fiduciary have control and authority over plan assets, which is an argument we are advancing here. Okay, but let's... I want to separate, because it seems to me that even though you're relying on a different section, it's the same argument. The Third Circuit says while you're negotiating your fees, while you're negotiating with the employer, you are not a fiduciary. Correct. And there's no facts here different that would affect that ruling if we thought it was correct, would it? There are no facts here that would affect that ruling. So if we were to find that Transamerica was a fiduciary while negotiating for its fees, we would have created a... We have conflicts all the time, but we would have created one. You would have. Okay. With respect to, and this is why I asked your friend these questions, let's assume that Transamerica is a fiduciary while managing the accounts. How is there a breach of fiduciary duty if it merely withdraws from those accounts a pre-agreed upon fund? Let me, before I respond to that, your honor, let me just... Judge Pragerson in his reasoning, and in our reasoning in the case, essentially said, consistent with the decision of the IT Corp, a future fiduciary cannot quote, get itself off the... Yeah, and I got some problems with that, but let's... Okay, I'll come back. Let's come back to it. But answer my second question. Yeah, let me respond to your honor's second question. Essentially what we assert is that Transamerica by withdrawing money from the separate account without any supervision, I'd like to address your honor's question on that, committed a prohibited self-dealing transaction. Well, but my problem is that transaction was agreed to by the employer, by the fiduciary, other fiduciary. The employer said you may every month take out a very specified percentage. Right. And you don't make any We make an allegation they took out an inappropriate amount, but if I could just No, no, no, no. Not that they took out more. Not that they took out more. The amount is specified in the contract and they complied with the directives and amounts in the contract. It makes no difference. But there is that allegation, right? I'm sorry? Your theory is that despite the fact that the withdrawals were exactly as specified in the contract, they're still acting as fiduciary. And let me say I might agree with you they were acting as a fiduciary while withdrawing the money. My question is how was there a breach of fiduciary duty by withdrawing the precise amount that the employer had agreed to? So I want to be clear about that question. That issue was resolved in the Ninth Circuit by the Barbosa case. No, it's not. No, the Barbosa case is a case where the fees are not precisely determined and somebody is paying the fees on its own. Here we have a very specific agreement with the employer as to what will be taken out. And so even if I agreed with you that there's some fiduciary duty while taking them out they took out too much, they would breach it. How do they breach it by taking out the amount agreed to? With all due respect Your Honor, if I could just go through a little bit of the Barbosa history for a moment. Sure, I've got it in front of me. So you can tell me how I misread it. I believe defendants make the assertion in their brief that there was a brief filed below that said that there was discretion over the fees. This is what the United States District Court in fact held in that case. And I'll read precisely from the opinion at page 10. There is no evidence that defendants determined their own fee. Indeed, it is undisputed that Casey who was the punitive fiduciary and Cap contractually agreed upon Casey's administrative fee. There is no evidence that Casey set their own compensation or determined their own expenses. As a consequence, the District Court granted summary judgment to the defendants in that case. Get up to the next opinion. I'm sorry? Get up to the opinion that you think binds us. It's a District Court opinion. Then it comes up to the Ninth Circuit Court of Appeals. The Ninth Circuit Court of Appeals not only reverses then presumably that finding was one that they acknowledged to exist but orders that summary judgment be granted in favor of plaintiff. So, if the issue as to agreeing to a fee were material to whether or not there was a prohibited transaction or a breach, the Ninth Circuit could not have remanded with a direction that summary judgment be granted. Point one. Point two. What was the other evidence in I always say the name wrong so, in that case of the interactions between the employer and the alleged fiduciary? Wasn't there substantial evidence of wrongdoing between the two of them? I don't believe in that. In Patelco there was, Your Honor. Not in that case. I don't believe there was, Your Honor. Okay. So, that case clearly stands for the proposition that the fact of negotiation is irrelevant to an assessment of whether or not there is a prohibited transaction. So, let me follow through with your argument. So, your argument is, and I'm asking you to assume, no breach of fiduciary duty in setting the fees. Yes, Your Honor. Nonetheless, there is a breach of fiduciary duty in withdrawing the amount agreed to. Yes. And you think our case stands for that proposition? Yes. But is it only the case that there's a breach of fiduciary in withdrawing the amount if the amount set in the contract is excessive? No. So, in other words, theoretically, let's say the contract calls for low fees, lower than anything that would be available in the market. And they follow the withdrawal exactly as specified in the contract. Doesn't our case law say that that's just a mere ministerial act? There is some case law that says that, but that is not what happened here for two reasons. All right. So, let me explore that theory. So, in some circumstances, if the fee set pursuant to the contract is reasonable and Transamerica acts pursuant to that contract, it's merely ministerial, so there's no breach there. So, your theory in this case hinges on the fact that the fees negotiated in the first place were excessive, and that's why the withdrawal is not merely a ministerial act, and that creates the fiduciary obligation that they breached? Is that the theory? No, it's a little bit more than that, Your Honor. It's, number one, whether the fee is reasonable or not, as this Court held in both Patelco and Barboza, the act of withdrawing the funds from a separate account is wrong because that is a per se prohibited transaction under Patelco, because the vulnerability, the dangers of permitting that to happen are so great that Congress enacted 406B to make it a per se violation, and both Judge Pragerson, Patelco, and Barboza state, we're not focused on the reasonableness or the amount of the fees. We're focused on the methodology of how it's withdrawn, and it is wrong when defendants say to you, that was mandated by contract. And on that theory, what subsection are you going under? 406B1, Your Honor. Or 1106B1, depending upon the review. You have an agreed upon set of fees, which I'm asking to assume where nobody has a fiduciary duty in offering the fees and having somebody else accept them. Contract requires that those fees be paid. You say there's a breach of fiduciary duty in collecting them out of the accounts. How would, then, what you're basically saying is the contract is irrelevant. Yes, I'm saying that, not that it's wrong, but subsequently when the putative Or put it differently, notwithstanding what the contract says, somebody must review the fees that were agreed to before they're actually paid out. I think that's one thing that should be done. And IT Corp in the Ninth Circuit essentially said a contract between a sponsor and a putative fiduciary cannot get the fiduciary off the hook if in the future it assumes fiduciary functions. And there are two functions that are going on here, and I'd like to come back to Judge Stieber's question about what's the remedy here. There are two things that are going on here that did not go on in Santa Mano. Because this application arises on an appeal from a motion to dismiss and on class certification, the evils that were committed, or the wrongs that were committed, were not addressed. But there are two things that go on here that distinguish this case from many others. Number one, the Supreme Court in Tybil determined that monitoring fees is a fiduciary function. Here, Transamerica expressly undertook by contract to monitor the fees. They determined... Go back to my question. You indicated that your theory would give rise to a claim under B-1. And I'm looking at B-1 in terms of defining who's fiduciary, and that is if he exercises any discretionary authority or discretionary control respecting management of such plan. You're not going under that language, correct? No, Your Honor. I'm sorry. In response to your question, I was answering what the prohibited transaction was. 406B-1 defines the prohibited transaction. 1002 defines... Okay. Then maybe we misunderstood each other. You're saying that even if the fees provided in the contract are reasonable, the mere withdrawal of those fees creates a fiduciary violation, right? Correct. And so then my question is, it creates a fiduciary obligation under which section of 1002 21A... Is it B-1? It's 1002 subsection I and subsection 3. So subsection I requires the exercise of discretionary authority or control. You're not relying on that, right? Subsection I says that if a person exercises fiduciary control with respect to the management of a plan, it's a fiduciary. We are relying on that. We are also relying on the second... There's two parts. One is the exercise of discretionary authority respecting management of such plan. And I want to make sure I understand your argument that you're not relying on that because the contract sets very specific terms, and there's no room for the exercise of discretion. So you're not relying on that particular provision, are we? And so how does that reconcile with the statutory language? Okay. The way they are exercising discretionary control is the following. They're undertaking by contract to monitor their own fees. When they undertake to monitor their own fees, and they're saying they are a fiduciary, they acknowledge they are a fiduciary. By undertaking to monitor their own fees, the outcome of that process is of necessity a discretionary process. How do they monitor the fees? What determinations have they made? By monitoring their own fees and saying they are reasonable, they say in their brief over many, many years they've found very few fees unreasonable. By monitoring their own fees, that is a discretionary act. Tybil, the Supreme Court, says as much. So that's number one. Number two, even though the fees agree to, that is not a defense under ERISA because fees have to be reasonable. And our expert report, which I know we briefly mentioned it, is that that fee agreed to or not is not reasonable. And the reason it is not reasonable, and this comes back to Judge Hurwitz's question, is they are doing things that are wrong with that money. Their documents say the investment management fee is used to manage the separate account. Their brief says it is not. What that is used to do is to subsidize plan level costs. So essentially it may subsidize sponsors' costs. It clearly is used, as they say, to pay brokers who bring business to Trans America. There's a provision in the contract that allows Trans America to change the level of the administrative and IM fees. Is there an allegation on this record that they ever exercised that authority? They have, but there's not an allegation that the exercise is necessary in order to confer fiduciary status. There is an allegation that they've exercised it? No, they say they've exercised it infrequently. We're not saying... No, in your complaint, is there an allegation that they've exercised it? No. We're saying that the ability to exercise that discretion coupled with the undertaking to monitor a fee creates a fiduciary duty to review the fee as Thibault held and exercise that discretion properly. I want to understand the upshot of your position. The upshot of your position is that even if the negotiation of fees, which is what the Third Circuit held, does not implicate fiduciary duties, once you've negotiated them, if you're going to collect them directly out of the account, you must thereafter review them for reasonableness. That's one component of the allegations. Now, let me change the facts a little bit. Yes, Your Honor. If instead of collecting them out of the account, you send a bill to the fiduciary employer and he pays them out of the account pursuant to his agreement to you, presumably then the plan manager hasn't reached any duties, has it? They have not. But... Okay, so why is it any different? It is different, Your Honor, for two reasons. Because you're not alleging that they did anything other than collect the same amounts that the plan employer could have paid them and should have paid them pursuant to a bill. That is correct. But what we are saying is that in addition to negotiating a fee, a risk still requires that the fee be reasonable. We are saying this fee was not reasonable for two reasons. One, they had an obligation to monitor and the fees were high. They did not fulfill that fiduciary responsibility. Secondly, Your Honor questioned earlier, are these fees diverted to a sponsor? Wouldn't that be a problem? In many respects, there is that capacity when they withdraw the fee. Yeah, but you didn't allege that they were. We did not. I'm focusing now, I'm assuming that you're right, that they're acting as a fiduciary when managing the account. I'm trying to figure out what the breach of duty is here. If they're only collecting the amount that everybody, that were agreed to in what I'm assuming you, I'm asking you to assume, were arm's length negotiations. Yeah, that essentially is the very facts I would submit, Your Honor, respectfully, of Barboza. They were collecting an agreed upon fee and this court remanded and ordered that summary judgment be entered for plaintiff. So, the fact of collecting an agreed upon fee cannot be material to an assessment of whether or not they violated 4-0. Wasn't there, and this is what I was looking for, wasn't there an increase in the fee in Barboza? Not that I recall, Your Honor. Well, the court refers to it. There was an increase in the fee in Barboza after the initial setting of the fee. Wasn't there? I do not, I read the case many many times. I do not recall that, Your Honor. I do recall in Patelco there was that flexibility. Barboza expanded upon Patelco. One of the things also Patelco holds, it doesn't matter if it's fair. It doesn't matter if there's not an injury. You cannot take a fee out of a separate account. There is no reasonableness defense. That is the wrong. Let me ask the Barboza question. There would be no fiduciary problem if the employer collected the fee and remitted it. Yeah, there's several ways to do that, and I'd like to come back to Your Honor's question. But the answer to that is that it wouldn't be a problem, right? It would not be a problem. So, why should, I mean, it doesn't make a lot of sense, does it, that it's a problem in one scenario and not a problem in another? I believe it makes sense for the following reason. There are several ways to cure this problem. They indicate this would be a draconian outcome for the industry. It would not. Number one, the brief from the insurance industry says not everyone collects fees in this manner. Number two, all they need to do is appoint a non- conflicted fiduciary to represent the separate account. Who would ask the following questions? Number one, have you fulfilled your monitoring obligation, and are those fees reasonable as you promised they were? The answer in this case would have to be no. Under your theory, though, it's very hard not to create a circuit split with the Third Circuit, because you're saying that if we follow the Third Circuit, the negotiation of the fees that's provided for in the contract, you're not acting as a fiduciary when you do that. But because you collected and you failed to monitor those very same fees, that triggers, then, a fiduciary obligation. For those very same fees for which you wouldn't have fiduciary responsibility. What the Third Circuit did hold is the negotiation fee is not a fiduciary function. Agreed. There would be a conflict. I've been asking you to assume they were exercising a fiduciary function when withdrawing it. The Third Circuit said no, they're not. They're not. But what every other case has held, CREER, the Seventh Court, that negotiating a contract does not immunize somebody who subsequently exercises fiduciary functions. Every circuit to consider the arguments you're making here, perhaps in different fashion, has rejected them. In different ways. For instance, in the... Well, we could sort of piece it all together. Yeah. One rejected one portion of it, another one rejected a different portion. Well, for instance... We'll have to piece it all together here. The arguments were somewhat different in each of those cases. Let me go back to Barbosa. This is what's bothering me. In Barbosa, the administrator has administrative expenses that it is taking out of the account. Yes. There is no indication that it is taking a precise percentage out of the account. It is... And that's what's in agreement, that they could take their administrative expenses out of the account. But I don't think those are one half... one basis point of the account amount. And that's... And I think... Maybe I'm wrong in that. But that's the way the district court describes the case. And I understand if that's true. This month I drove 25 miles and I paid four people this amount. Why, it makes perfect sense to say you shouldn't control both the determination of those amounts and collection of them. But does Barbosa really stand for the proposition that when somebody withdraws a precisely identified monetary amount, one percent of whatever is in the account, that that's a violation of fiduciary duty? Yes. And you think that's the expenses in Barbosa? Yes. It's because the act of withdrawal is the violation, is the prohibited transaction. What Barbosa says before the district court is there is no evidence that defendants determine their own fee, which is what is at issue here. But it also involves expenses. It does. But it goes on to say it is undisputed that the fee was agreed to, which is precisely the facts alleged by defendants. That's just a backdoor into then saying you have a fiduciary obligation when you're negotiating your fees, which then says that there'd be a dis-circuit split. You can't have one without the other. If you say the act of withdrawing the agreed amount is then a fiduciary question, you've effectively said you've got a fiduciary obligation when you're negotiating the fee. The act of withdrawing was not agreed to in the group annuity contract. The council indicated it was mandated. It said you may withdraw. Transamerica exercised... If you're an employer and you say, I owe you .1 percent of the account amounts every month, I could write you a check for those. But it's really simpler since you're running the account for you to take out the .1 percent and I'll monitor to make sure you took out the correct amount. And there's no allegation in this case that they took out an incorrect amount. And so I'm having difficulty figuring out how the harm to your clients occurred by this. So what's their damage from this alleged breach of fiduciary duty? The damage is the following. By taking out the amount they took and representing in the monitoring of fees that that amount is reasonable when it was not. You're agreeing with Judge Seaborg's question. When you set these fees, they really weren't final fees. They were subject to renegotiation at every point along the way. And therefore, even if you only took out the amount that was precisely agreed upon in each circumstance, that's wrong because you couldn't do that. You had to look at that point and say, is the precise amount we've agreed... Now that we've become a fiduciary in managing the fund, the precise amount we agreed to is no longer relevant. It has to be reviewed for reasonableness. That's your position. Much better than I. I want to understand your position. That is the position, and that is uniformly the law throughout the circuits. Although not in any of the circuits that have addressed this case. The issues in those courts were not pled the same way. In Santameno, the argument was the negotiation is a fiduciary function. You're trying out better arguments on us than you make in the circuit. But they are better arguments because they're compatible with the Ninth Circuit law and IT Corp, which says indisputably the negotiation of a contract between a sponsor and someone who becomes a fiduciary cannot get the future fiduciary quote, off the hook, for two reasons. Number one, as Judge Pragerson found, that you cannot negotiate out from under fiduciary responsibilities once you assume them. Number two, it's not an arm's length negotiation because the sponsor who is doing the negotiation is different than the employees who are paying the fees. Thank you, counsel. You're well over time. We have a better handle on your argument today. Thank you. Thank you, Your Honor. Thank you. I have a grand total of 30 seconds. Well, if you only have 30 seconds, it would be very helpful to me if you addressed Barbosa. Yeah, that's where I was going to go, Your Honor. I will confess that Barbosa is a little bit murky. There was something in this one-paragraph analysis, an application of Patelco Credit Union, which is a very clear principle. You know, you engage in a self-dealing P.T. or privity transaction when you both determine your fees and collect them. That's easy to understand. Barbosa does a one-paragraph application of that principle to the case. There was something that bothered the panel about the agreement that it didn't completely define everything that needed to be defined in the agreement to allow the fees to be collected. I'm going to quote from the plaintiff's brief on appeal where they say that the administrator determined the timing and the amounts, the increments of these payments, which varied widely over time. And so our thinking is that even if the agreement specified the amount of the fees, which was disputed, by the way, the plaintiff's disputed whether the agreement really set the amount of the fees. What the agreement didn't say is how frequently they're to be collected, whether in arrears or in advance, in what increments and so forth, and the administrator exercised discretion in taking the fees as it wished. And that's what I think was bothering the court in Barbosa. But again, it's a one-paragraph application of Patelco Credit Union, and I don't think it was intended to change the law, which was self-dealing priveted transactions involve real self-dealing, where you're determining your own fees and taking from plant assets at the same time. If your honors have any questions, I'd be happy to address them. Thank you, counsel. Thank you. Thank you, your honor. All right, interesting issues in this case. We'll submit the matter for a decision, and that concludes the calendar for today and for the week as well. We're adjourned. All rise. Court for this session stands adjourned.
judges: Nguyen, Hurwitz, Seeborg